

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 28, 1958

Honorable Bill Allcorn            Opinion No. WW-478
Commissioner
General Land Office          Re: Questions concerning per
Austin 14, Texas                 diem and travel allowances
                                 for employees of General
                                 Land Office - Sections 29,
                                 30 and 31 of House Bill No.
                                 133, Acts of the 55th Legis-
                                 lature, Regular Session,
Dear Mr. Allcorn:                1957.

        We have received your letter of April 29, in which
you request our opinion on two questions concerning travel
expense allowance for employees of the General Land Office,
which reads as follows:

        "1.    Case Number One.

        "John T. Halsey is employed by this office
    as a geophysical inspector and his headquar-
    ters are in Palacios, Texas.  Mr. Halsey was
    assigned as a seismic inspector in the Gulf
    of Mexico aboard a boat operated by the Shell
    Oil Company and instructed to report to that
    company and board the boat in Aransas Pass,
    Texas.  In order to do so, he drove his car
    from his headquarters in Palacios, Texas, to
    Aransas Pass, leaving the car parked at the
    docks at Aransas Pass while on duty in the
    Gulf of Mexico.  The boat, at the close of
    its seven day working period, did not return
    to Aransas Pass, but instead put in at the
    nearest port which was Freeport, Texas, from
    which work was to be conducted during the
    next work period.

        "On February 12, 1958, Mr. Halsey travel-
    ed by bus from Freeport to Aransas Pass,

picked up his car and drove back to Freeport, again boarding the boat for work in the Gulf of Mexico.

"In submitting his travel expenses, Mr. Halsey included his bus fare in the amount of $4.50 and cab fare of 50¢ from the bus station in Aransas Pass to the docks. The State Comptroller has refused to approve this expense account, the $8.00 per diem account for February 12, as well as travel expenses for the 158 miles involved in moving the car from Aransas Pass to the new docking location in Freeport.

"While the amount of money here involved is comparatively small, your opinion as to whether or not Mr. Halsey should be allowed his travel and per diem expenses is needed since the procedure followed by Mr. Halsey is quite often necessary for geophysical inspectors.

"2.  Case Number Two.

"J. M. Morgan is also employed by this office as a geophysical inspector and his headquarters are in Bay City, Texas.

"On March 1, 1958, Mr. Morgan was assigned to seismic inspection work with the National Geophysical Company in San Antonio Bay and the port being used by the Company was Seadrift, Texas. There were no accommodations in Seadrift, the nearest accommodations being in Port Lavaca. Mr. Morgan could have stayed in Port Lavaca at a cost to the State of $10.52 per day ($8.00 per diem allowance plus mileage) or he could return to his headquarters daily at a total cost to the State of $9.38 per day for mileage.

"The particular section here involved is a rider in Section 31 prescribing in somewhat ambiguous language that when it is cheaper, a

traveling State employee may return to his
headquarters daily. The rider goes further,
however, and provides that expenses on a
daily basis shall not exceed the per diem
allowance of $8.00. Under a strict interpre-
tation of this rider, i.e., a limitation of
$8.00, the employee, if he did not want to
lose money, would have been forced to stay in
Port Lavaca at a greater cost to the State.
The question is, then, whether the Legisla-
ture intended that Section 31 be given this
strict interpretation and thus result in a
greater cost to the State.

"Here again, your official opinion as to wheth-
er or not Mr. Morgan should be allowed his expenses
is needed because there are numerous instances where
geophysical inspectors cannot find suitable lodging
in the port where the ship may be."

The General Land Office assigns seismic inspectors
to private exploration boats manned by private crews and oper-
ated under company instructions in areas and upon schedules
of the company's option. The inspector has no control over
the operations, schedules, ports of departure or ports of
return, but merely accompanies the boat on its exploration,
and inspects and reports on the work done. When a seismic
inspector is assigned to a particular boat for a certain per-
iod of time, his duties may require him to be in several ports
during the course of his inspection.

Your supplemental request shows that Land Office
procedure requires the inspector to take certain records to
the port of departure in order to have them available for his
work. However, Land Office procedure prohibits the inspector
from taking any records, maps, etc. with him on the boat,
except the actual daily report he is then completing. (This
is to avoid the possibility of losing the information already
compiled in the event of some disaster). It further seems
apparent that it would be impractical to rent an office or
hotel room in which to keep the records and maps, because the
inspector usually stays out in the Gulf of Mexico for a period
of seven to ten days. You further stated, "These items . . .

are left locked in the cars". Your supplemental request says, in part:

"The working program of geophysical inspectors is unpredictable because of weather and other conditions and the inspector often finds it necessary to make an overnight trip to move his car, his personal belongings, maps and other records to a different location along the coast. . . . "

Sections 29, 29(f), 30(a) and 31(b) of House Bill 133, Acts of the 55th Legislature, Regular Session, 1957, are applicable in determining the propriety of making the travel expense and per diem payments in question.

The expense account of Mr. Halsey shows that on the 12th day of February, 1958, he traveled from Freeport to Aransas Pass to pick up his vehicle (left there when he was working out of Aransas Pass). Corresponding travel allowances are claimed for bus travel to Aransas Pass, taxi fare in Aransas Pass and mileage back to Freeport. The requirements of a seismic inspector are somewhat peculiar in that neither the inspector, nor the State has any control over where his work will take him, or, indeed, where any one boat trip will take him.

Since this assigned duty required him to leave his designated headquarters, travel to and be in Aransas Pass to work with the boat while there, and to have certain maps and records with him which could not be taken out on the boat; and also to travel to and be in Freeport to work with the boat while there and have the maps and records with him there, as well, we are of the opinion that the travel to Aransas Pass and then to Freeport was necessarily incident to such assignment, in those instances where it was necessary to use his automobile in which to safely keep such records. Whether it was necessary to leave the car at the dock in which to store the records is a fact question, upon which this office cannot pass. We do not conceive it to be the intent of the Legislature to penalize a State employee for performing his assigned duties in the only manner possible or practical under the circumstances. We are of the opinion that the travel allowance should be paid.

From the expense account, it is apparent that on

certain days the boat did not go out, either because of bad weather or because the crew had a day off. During this time, the inspector stood by awaiting another trip. The fact that he was not able to inspect was entirely beyond his control or the control of the State. He was required to be away from his designated headquarters on an official assignment during this time, and he, therefore, should receive his per diem allowance. It may be true that such an employee could be required to return to his designated headquarters during these idle periods, but this is an administrative decision, and not for our consideration here.

The employee in question arrived in Freeport on February 9, 1958, and was required to stand by on the 10th, 11th and 12th of February. He left Freeport for another inspection on February 13th. In our opinion, the employee would be entitled to per diem for the 12th of February, just as he was on the 10th and 11th, since his assignment was incomplete, and he had not officially returned to his designated headquarters.

Insofar as Case Number Two is concerned, Section 31(g) specifically provides that:

"Except that when it is cheaper, a traveling state employee may return to his headquarters daily or on the weekend rather than stay out at State's expense; cheaper--as it applies to daily round trips shall be determined by computing the mileage and per diem on a daily basis and the entire mileage and per diem on any one day shall not exceed the per diem allowance of $8.00. . . . " (Emphasis added).

Under certain circumstances it might be advantageous to the State to have the mployee return to his designated headquarters, rather than seek lodging at or near his post of duty. If the employee returns to his designated headquarters each night, he may be compensated, but the provisions of Section 31(g) make it clear that the maximum he may be paid is $8.00. The provisions of the Appropriation Bill are explicit in this respect. We are of the opinion that, even though particular instances may arise wherein such provision forces the employee to remain away from his designated headquarters,

thereby incurring expenses greater than if he came home each night, this is for the determination of the Legislature in promulgating the rules and regulations under which State employees are reimbursed their travel expenses, and we are unable to write exceptions into the Appropriation Bill. The Section to which you refer must be strictly construed, and the result is as you point out in your request.

## SUMMARY

The travel allowances and per diem claimed by a seismic inspector should be paid when the travel was necessary to the performance of his assignment, even though it may have been occasioned by circumstances beyond his control or control of the State; when a State employee returns to his designated headquarters daily or on the week end, rather than stay out at State's expense, the entire mileage and per diem on any one day shall not exceed the per diem allowance of $8.00.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Tom I. McFarling
Tom I. McFarling
Assistant

TIM:jl

APPROVED:

OPINION COMMITTEE

L. P. Lollar, Chairman

Wayland C. Rivers, Jr.

Jot Hodges, Jr.

Riley Eugene Fletcher

J. W. Wheeler

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    W. V. Geppert